**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 17, 2025**

# In the Court of Appeals of Georgia

A25A0607. BLUE 42 ORGANICS, LLC v. GEORGIA
DEPARTMENT OF PUBLIC SAFETY.

DILLARD, Presiding Judge.

Blue 42 Organics, LLC filed a lawsuit against the Department of Public Safety,[1] alleging it suffered compensable damage to its property as a result of a DPS drug-interdiction operation. DPS moved to dismiss, arguing the alleged property damage occurred during the exercise of its police powers, and so the doctrine of sovereign immunity barred Blue 42's claim. The trial court agreed and granted DPS's motion. On appeal, Blue 42 contends the trial court erred in dismissing its complaint, arguing

---

[1] For the sake of clarity and convenience, we refer to Blue 42 Organics, LLC as "Blue 42" and the Department of Public Safety as "DPS."

DPS's actions did not constitute a valid exercise of police power, and therefore, its claim was not barred by sovereign immunity. For the following reasons, we affirm.

A motion to dismiss asserting sovereign immunity is based on the trial court's "lack of subject-matter jurisdiction, rather than the merits of the plaintiff's claim."[2] Put another way, sovereign immunity is not "an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case."[3] Significantly, a waiver of sovereign immunity "must be established by the party seeking to benefit from that waiver; thus, the plaintiffs have the burden

[2] *Alred v. Ga. Public Defender Council*, 362 Ga. App. 465, 465-66 (869 SE2d 99) (2022) (punctuation omitted); *accord Dep't of Pub. Safety v. Justice*, 320 Ga. 149, 153 (907 SE2d 817) (2024); *State v. Fed. Def. Program, Inc.*, 315 Ga. 319, 343 (882 SE2d 257) (2022); *Baldwin Cnty. v. Dep't of Behav. Health and Dev. Disabilities*, 371 Ga. App. 762, 762 (903 SE2d 146) (2024); *see* OCGA § 9-11-12 (b) (1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion in writing: (1) Lack of jurisdiction over the subject matter[.]").

[3] *Alred*, 362 Ga. App. at 466 (punctuation omitted); *see Polo Golf and Country Club Homeowners Ass'n, Inc. v. Cunard*, 306 Ga. 788, 790 (1) (a) (833 SE2d 505) (2019) ("Sovereign immunity is a threshold determination that must be ruled upon prior to the case moving forward on the more substantive matters."), *overruled on other grounds by Cobb Cnty. v. Floam*, 319 Ga. 89, 93-94 (1) (901 SE2d 512) (2024).

of establishing waiver of sovereign immunity."[4] And so, when reviewing a trial court's ruling on a motion to dismiss on this basis, we do so "*de novo* while sustaining factual findings if they are supported by any evidence."[5]

Bearing this legal backdrop in mind, the record shows that Blue 42 is a licensed hemp grower in Georgia and operates a licensed hemp farm in Dahlonega that is properly registered with both the Georgia Department of Agriculture and the United States Department of Agriculture. On July 21, 2021, DPS—acting through the Governor's Drug Suppression Task Force—conducted a drug-suppression operation in the Dahlonega area. During this operation, three helicopters and one single engine fixed wing aircraft flew over Blue 42's farm at an altitude so low that they destroyed two rows of legally registered hemp crops valued at approximately $37,000.

Blue 42 filed suit against DPS, alleging claims of inverse condemnation and private nuisance based on the damage to its hemp crops. DPS answered and moved

---

[4] *Alred*, 362 Ga. App. at 466 (punctuation omitted); *see Ga. Dep't of Lab. v. RTT Assocs., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016) ("The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it.").

[5] *Alred*, 362 Ga. App. at 466 (punctuation omitted); *see RTT Assocs.*, 299 Ga. at 81 (1) ("Whether sovereign immunity has been waived under the undisputed facts of this case is a question of law, and this Court's review is de novo.").

to dismiss, arguing the doctrine of sovereign immunity barred both of Blue 42's claims. Blue 42 then amended its complaint, alleging only a claim for inverse condemnation. DPS renewed its motion to dismiss, again arguing that sovereign immunity barred the inverse-condemnation claim, and Blue 42 filed a response. Ultimately, the trial court granted DPS's motion to dismiss, finding that sovereign immunity barred the claim for inverse condemnation because the alleged damages stemmed from the state's exercise of its police power. This appeal follows.

Blue 42 claims the trial court erred in dismissing its complaint, arguing DPS's actions were not a valid exercise of police power, and so its inverse-condemnation claim was not barred by sovereign immunity. We disagree.

Inverse-condemnation claims "draw their meaning and remedies from the eminent domain provisions in the Fifth Amendment of the United States Constitution and Article I, Section III, Paragraph I of the Georgia Constitution, each of which protects against uncompensated 'takings.'"[6] More precisely, inverse condemnation

---

[6] *Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 605 (III) (807 SE2d 876) (2017) (punctuation omitted); *see* U.S. Const. amend. V (providing that private property shall not "be taken for public use, without just compensation" ); Ga. Const. of 1983, Art. I, Sec. III, Par. I (a) ("Except as otherwise provided in this Paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.").

is an action "brought by a private landowner under the [eminent-domain provisions] alleging the taking or damaging of the private property for public purposes without the initiation of eminent domain proceedings."[7] And significantly, the Supreme Court of Georgia has held that "sovereign immunity is waived when a private property owner asserts a claim for inverse condemnation[.]"[8]

That said, our cases have articulated a distinction "between eminent domain and the police power; the two powers serve a different set of purposes and are subject to different limitations."[9] The police power of a governing authority is "properly used

---

[7] *Dep't of Transp. v. Mixon*, 312 Ga. 548, 548 n.1 (864 SE2d 67) (2021); *see Bray v. Dep't of Transp.*, 324 Ga. App. 315, 317 (3) (750 SE2d 391) (2013) (explaining that an inverse-condemnation action is brought under the eminent-domain provisions of the Georgia Constitution requiring the payment of compensation for the taking or damaging of private property for public purposes).

[8] *Kitchens v. Lincoln Cnty.*, 368 Ga. App. 349, 352 (890 SE2d 121) (2023); *see Mixon*, 312 Ga. at 548 ("This Court has long held that [the eminent-domain provision] waives sovereign immunity for inverse condemnation claims seeking monetary compensation."); *Rabun Cnty. v. Mountain Creek Estates, LLC*, 280 Ga. 855, 856 (1) (632 SE2d 140) (2006) (noting that the eminent-domain provisions of Georgia Constitution waive sovereign immunity). *See generally* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) (extending sovereign immunity to the state and all of its departments and agencies, except as specifically provided in this paragraph, and providing that this sovereign immunity can be waived only by an act of the General Assembly that specifically provides for such waiver).

[9] *Diversified Holdings*, 302 Ga. at 605 (III) (punctuation omitted).

to regulate property to prevent its use in a manner detrimental to the public interest, while the exercise of eminent domain involves the taking of property because it is needed for public use."[10] But the constitutional provision prohibiting "the taking of private property for a public purpose without compensation has no relevance to the exercise of the police power by the state or its political subdivisions."[11] And the police power is that power "by which the Government may destroy or regulate the use of property in order to promote the health, morals[,] and safety of the community, and

---

[10] *Id.* (punctuation omitted); *accord Mayor & Aldermen of the City of Savannah v. Savannah Cigarette & Amusement Servs.*, 267 Ga. 173, 174 (476 SE2d 581) (1996).

[11] *Amica Mut. Ins. Co. v. Gwinnett Cnty. Police Dep't*, 319 Ga. App. 780, 781 (738 SE2d 622) (2013) (punctuation omitted); *see Diversified Holdings*, 302 Ga. at 606 (III) (noting that eminent-domain language in our state Constitution, distinct from the police power, places a condition on the exercise of the takings power); *Lewis v. DeKalb Cnty.*, 251 Ga. 100, 103 (2) (303 SE2d 112) (1983) (holding under predecessor to 1983 Georgia Constitution that provision prohibiting the taking of private property for a public purpose without compensation had "no relevance to the exercise of the police power by the state or its political subdivisions"); *McCoy v. Sanders*, 113 Ga. App. 565, 567 (148 SE2d 902) (1966) ("This police power or the law of overruling necessity is not controlled by the constitutional limitation that private property shall not be taken for public use without compensation, which was not designed for, and should not be extended to such cases.").

the police power may be exercised without making compensation for the impairment of the use of property or any decrease in the value of property."[12]

Here, Blue 42 alleged in its complaint that DPS—acting through the Governor's Drug Suppression Task Force—conducted a drug-suppression operation, during which low-flying aircraft destroyed part of its hemp crop. This allegation indicates that Blue 42's property was damaged by an exercise of police power. Even so, Blue 42 counters that because it was operating a legal hemp farm, DPS's conduct was an invalid exercise of police power. But this argument essentially seeks to impose a requirement that police power must be flawlessly executed for sovereign immunity to apply. That is not the law. To the contrary, in describing the police power, we have explained that "[t]he safeguarding of society by the prosecution of crimes against it is a sovereign attribute inherent in all governments, *and for mistakes* in exercising this sovereign right there can be no liability against the government without its consent."[13] Given these circumstances, Blue 42's amended complaint alleges no evidence that

---

[12] *Amica Mut. Ins.*, 319 Ga. App. at 781 (punctuation omitted); *accord McCoy*, 113 Ga. App. at 569-70.

[13] *Bray v. Houston Cnty.*, 180 Ga. App. 166, 168 (348 SE2d 709) (1986) (punctuation omitted) (emphasis supplied); *accord McCoy*, 113 Ga. App. at 569.

would allow it to avoid sovereign immunity and obtain relief from DPS.[14] The trial court did not err, then, in granting DPS's motion to dismiss.[15]

*Judgment affirmed. Mercier, C.J., and Land, J., concur.*

---

[14] *See Amica Mut. Ins.* , 319 Ga. App. at 781-82 (holding county was entitled to sovereign immunity against plaintiff's inverse-condemnation claim stemming from damage to insured home during standoff between county police department and occupant of home because eminent domain had no relevance to the exercise of the police power); *Bray*, 180 Ga. App. at 167-68 (explaining because there was no question that officers searching for the missing weapon were acting under the police powers of the state, damage to plaintiff's vehicle, which was struck by another vehicle while plaintiff was using it to assist officers in search, could not be compensated via an inverse-condemnation claim); *McCoy*, 166 Ga. App. at 569-70 (holding damage to plaintiff's property resulting from officers seeking to locate the body of a murder victim believed to have been hidden in plaintiff's pond cannot be maintained as the action of the officers was pursuant to the police power).

[15] *See Amica Mut. Ins.*, 319 Ga. App. at 782 (holding trial court did not err in dismissing plaintiff's complaint alleging inverse condemnation because damage to home was result of exercise of police power).